SINCLAIR (WILLIAMS v.). See Case No. 17,737.

## Case No. 12,897.

### SINGER et al. v. BRAUNSDORF et al.

[7 Blatchf. 521.] [1]

Circuit Court, S. D. New York.    Sept. 20, 1870.

PATENTS—DATE OF APPLICATION — ABANDONMENT — SPECIFICATION — AMENDMENT — SEWING MACHINES.

1. Where the model and drawings filed with an application for a patent fully represented the improvements claimed in a patent subsequently granted to the applicant, it was *held*, on the facts in this case, that he had not abandoned his application, and that he was entitled, in respect to the question whether such improvements were in public use or on sale, with his consent and allowance, for more than two years prior to his application for a patent therefor, to have the date of the making of such application regarded as the date of his application for the patent so granted.

[Cited in Goodyear Dental Vulcanite Co. v. Willis, Case No. 5,603; Weston v. White, Id. 17,459; Lindsay v. Stein, 10 Fed. 913.]

2. A specification accompanying an application for a patent is always open to amendment of its description and claims, and to the addition of new matters of description and new claims, where the drawings and model exhibit the matters involved in the amendments and additions; and this privilege continues until the matter of the application is finally disposed of, by the granting of a patent, or otherwise.

[Cited in Westinghouse v. New York Air-Brake Co., 59 Fed. 602.]

3. Where the improvements claimed in a patent are shown in the model and drawings which were filed with an application for a patent previously made by the patentee, he is, in respect of the patent so granted, to be regarded as having applied, by such application, for a patent for everything found in such model and drawings, for which he could, at the time of making such application, have obtained a valid patent.

4. Forfeitures and abandonments are not favored, and must be clearly made out.

5. The letters patent granted to Isaac M. Singer, November 4th, 1856, for an "improvement in sewing machines," are valid.

6. The third claim of that patent, in claiming the use of a griping lever, "substantially as described," to impart a feeding motion, claims such use to impart such motion automatically, by machinery, and not by hand, and is not defeated by the prior existence of a griping-pawl, actuated by hand, to gripe a feed-wheel.

7. A patent is not invalidated by the fact that the invention claimed in it was described, but not claimed, in a patent granted subsequently to the making of the application for the patent secondly issued, but before it was granted.

[This was a bill in equity by Isaac M. Singer and Edward Clark against Julius E. Braunsdorf and Henry Weil for the infringement of letters patent No. 16,030, granted to plaintiff Isaac M. Singer November 4, 1856.]

[1] [Reported by Hon. Samuel Blatchford. District Judge, and here reprinted by permission.]

George Gifford and Edwin W. Stoughton, for plaintiffs.

Frederic H. Betts, for defendants.

BLATCHFORD, District Judge. This suit is brought to recover for the alleged infringement of letters patent granted to Isaac M. Singer, November 4th, 1856, for an "improvement in sewing machines." The plaintiffs claim that the defendants have, by the manufacture and sale of a sewing machine called the Aetna machine, infringed all the claims of the patent, which are four in number: (1) "Operating the needle, to give it the required reciprocating motions, substantially such as described, by a crank-pin, or roller, on a rotating shaft, acting in a cam-groove, substantially such as herein described, whereby the required motions are imparted to the needle with much less extent of motion of the crank-pin, or roller, in the cam-groove, and, consequently, less friction, than if the cam-groove were on the shaft, and the pin, or roller, on the needle-carrier, as described;" (2) "projecting the operating part of the surface of the feeding apparatus through the surface of the table, substantially as described, so that such feeding surface may act on a portion of the under surface of the material to be sewed, to give the required feeding motion to space the stitches, while the other portions of the said material slide on the table, which answers the purpose of stripping the said material from the feeding surface, and to cover and protect the mechanism which operates the feeder, as set forth;" (3) "imparting the feeding motion to the feeder, to present the material to be sewed to the action of the needle, for spacing the stitches, by griping the periphery thereof, or any equivalent therefor, by a griping lever, substantially as described, in contradistinction to the action of a pawl or hand catching on to ratchet teeth, whereby the extent of feeding motion may be adjusted and varied to any degree, instead of being restricted by the size of ratchet teeth, and whereby, also, I avoid the wear and liability to derangement incident to the use of a ratchet motion, as set forth;" (4) "In combination with the feeder, attaching the presser, for controlling the material to be sewed, and holding it to the surface of the feeder, to a slide, or equivalent therefor, substantially as described, so that the plane of its under surface shall always bear the same relations to the plane of the table, in a line at or nearly at right angles to the line of the seam, whether the material to be sewed be thick or thin, and for the purpose set forth."

One of the defences set up in the answer is, that the improvements claimed in the patent had been in public use and on sale, with the consent and allowance of Singer, the inventor, for more than two years prior to his application for a patent therefor. It is not disputed, that sewing machines constructed by Singer, and containing the arrangements of mechanism claimed in all four of the

claims in question, were put on sale by him in the market about the 1st of January, 1851, and were sold in that year at the rate of about twenty per week. The plaintiffs contend, that the patent sued on was applied for by Singer on the 12th of December, 1850, and, therefore, before any public use or sale of the improvements claimed. The defendants contend that the patent sued on was not applied for by Singer until the 14th of March, 1853, and, therefore, more than two years after the improvements in question were first put on sale by Singer. This question is to be determined by a reference to the records from the patent office, which have been put in evidence.

On the 18th of October, 1850, Singer made oath to a specification, accompanying a petition signed by him, praying for a patent for improvements in a sewing machine. The petition, oath, specification, and accompanying drawings were filed in the patent office on the 12th of December, 1850. On the 14th of December, 1850, the model on the application was filed, and the certificate of the payment of the required fee of thirty dollars was received at the patent office. The drawings consisted of five figures, and are five of the six figures of drawings forming part of the patent sued on, the sixth figure having been subsequently added, and exhibiting a side view of the feed-motion. The model thus filed is the one on which the patent sued on was issued. The drawings represented fully all the improvements patented. The specification filed December 12th, 1850, contained a satisfactory description of three of the four improvements which are claimed in the patent of 1856, namely, those covered by the first, second and third claims of that patent. It did not contain any description of the mechanism covered by the fourth claim of that patent. It did not claim, as the invention of Singer, any of the improvements which are covered by any of the claims in the patent of 1856, except the first claim. In respect to that it claimed, as an invention, operating the needle by a crank-pin working in a cam-groove attached to or making part of the needle-carrier. That was its third claim. Its other four claims, there having been in it five claims in all, related to matters which are not embraced in the four claims of the patent of 1856. Before any action was taken by the patent office on the application, the applicant erased the second claim. The other four were rejected on the 6th of March, 1851. On the 24th of July, 1851, Singer presented to the patent office a new specification and oath on the same application, and asked that the case might be considered anew. The papers and drawings had been returned to the applicant on the 24th of March, 1851, and it was on this occasion that the sixth figure was added to the drawings, as this specification of July, 1851, refers to figure six as being a side view of the feed-motion. The other five figures of drawings were the same as before, and there was no new model and no new fee. This specification of July, 1851, contained a description of the improvements which are covered by the first, second, and third claims of the patent of 1856, but did not contain any description of the mechanism which is covered by the fourth claim of that patent. It did not claim any of the improvements which are claimed by any of the four claims in the patent of 1856. It contained, as originally presented, only two claims: (1) The combination of a straight needle, carried by a carrier sliding in ways perpendicular to the material, with a shuttle; (2) the application of the driving force to the needle at a point in a line with its motion. Such first claim was substantially the same as the first claim in the specification filed in December, 1850. On the 29th of October, 1851, the patent office rejected the two claims of the specification of July, 1851. The papers having been returned to the applicant, he erased the second claim, and altered the language of the first, leaving its substance the same as before. On the 19th of January, 1852, it was rejected. On the 21st of January, 1852, the specification was returned to the applicant. He made some alterations in the description and claim, and, on the 22d of January, 1852, asked for a reconsideration of the case, urging, in an argument, the granting of the claim for the combination of the straight needle with the shuttle. On the 12th of February, 1852, the application was again rejected. The papers were returned to the applicant on the 14th of April, 1852. A new form of claim was drawn, and, on the 21st of April, 1852, presented to the patent office, accompanied by an argument in its favor. This claim claimed the employment of a straight needle working in a permanent frame, perpendicular to an unyielding bed, through which the needle works, and is guided to receive the thread from the shuttle below. On the 22d of May, 1852, the patent office rejected this claim. In its letter of that date to the applicant, it said: "This office has heretofore carefully examined and rejected four sets of claims, which have been successively presented and abandoned by you, and now, having found the fifth unpatentable, further action on this application is positively declined. Mr. Singer can withdraw, or appeal." The papers and drawings were returned to the applicant in December, 1852. On the 6th of January, 1853, he made oath to a new specification. On the 10th of January, 1853, the papers and drawings, and the new specification, were transmitted to the patent office, as a part of the case in which the application had been rejected, with a request for action on the new specification. A letter on the subject was addressed by the office to the applicant on the 11th of February, 1853, but it is not produced, and its contents are not made known. The specification was returned to the applicant on the

19th of February, 1853. On the 14th of March, 1853, there were received at the patent office, a petition of Singer for a patent, accompanied by a specification, and an oath made January 6th, 1853, and a certificate of the deposit of thirty dollars as a fee. These were accompanied by a letter from the attorney for Singer, of the 11th of March, 1853, saying: "In the matter of the application of Isaac M. Singer, for letters patent for improvement in sewing machines, which has been several times rejected under the late commissioner of patents, I have the honor to submit the enclosed new specification, and to request a reconsideration of the case, and, in conformity with the practice of the patent office in such cases, I enclose a certificate of deposit for another fee of thirty dollars." The office addressed a letter to the attorney, on the 14th of March, 1853, but it is not produced. In a reply to it, on the 16th of March, 1853, the attorney said: "In the matter of the renewed application of Isaac M. Singer, for patent for improvements in sewing machines, I have to acknowledge the receipt of your communication of the 14th inst. The present application of Mr. S. is identical with the former, and I am glad, therefore, that the same model may be used." The office permitted the former model to be used. The necessary drawings were filed on the 1st of April, 1853. The only claim which was contained in the specification so filed on the 14th of March, 1853, was rejected on the 14th of April, 1854. That claim was a claim to the combination of the straight needle with the shuttle, and was substantially the same as the claim on that subject which had been before rejected. On the 22d of August, 1855, the specification was returned to the applicant. On the 23d of September, 1856, the applicant made oath to a new specification, and requested a re-examination of the case upon that. The drawings accompanying this specification were the same six figures of drawings before referred to. The descriptive parts of this specification were the same as in that of the patent sued on. It contained six claims, four of them being the four claims contained in that patent, and being numbered in such specification as claims two, four, five, and six. The claim respecting the combination of the straight needle with the shuttle was entirely dropped, claims one and three relating to other points. On the 24th of September, 1856, the patent office acted on the application. It rejected claim one for want of novelty, and allowed claim three. In regard to claim two (which is claim one of the patent sued on) it said: "To the second clause of the claim the office at present will not object, although substantially the same device is found in your patent of the 12th of August, 1851; but, as it is not claimed in that patent, and as the present application was dated within two years of the patent, the office deems you now entitled to a claim to the specific devices the second

clause involves." It rejected claims four and six (which are respectively claims two and four of the patent sued on) on the ground that they were claimed in Singer's reissued patent of October 3d, 1854. It rejected claim five (which is claim three of the patent sued on) on the ground that it was claimed in Singer's patent of the 13th of April, 1852. On the 11th of October, 1856, the applicant erased the first claim, and his attorney addressed to the patent office a letter, saying: "I observe that the department appears to be under the impression that this application was first filed in January, 1853. Such is not the fact. It was originally filed on the 14th of December, 1850; rejected March 6th, 1851; refiled, on an amended specification, January 10th, 1853; again rejected April 14th, 1854; and again filed, in the present form, September 24th, 1856." In this view, a reconsideration was asked of the decision as to claims four, five, and six. The office, on the 16th of October, 1856, on a re-examination, rejected claim three for want of novelty. In regard to the other claims it said, in a letter of that date: "In the examination of your application for letters patent for alleged improvements in sewing machines, at the close of the past month, the original application was overlooked by the examiner, but your letter of the 11th instant brings it to his notice. * * * The objection made to the fourth clause of the claim will no longer be insisted upon, but will, in consequence of the existence of the device it covers in the original model, be allowed; nor, as at present advised, will any objection be urged to the fifth and sixth clauses of the claim." The applicant then erased the third claim, and the patent was issued in its present shape.

On the foregoing facts, it is contended, on the part of the defendants, that the application for a patent for the improvements which are covered by the claims of the patent sued on was not made until the 14th of March, 1853; that the application of the 12th of December, 1850, was abandoned; and that, consequently, it is established that the improvements in question were on sale, with the consent and allowance of Singer, for more than two years before he applied for a patent for them. There can be no doubt whatever, that the model and drawings filed in December, 1850, fully represented the four improvements claimed in the patent sued on; that the specification then filed fully described the improvements claimed in the first, second and third claims of that patent; and that such specification claimed, in substance, what is covered by the first claim of such patent. Such claim to the operation of the needle by a crank-pin working in a cam-groove attached to or making part of the needle-carrier, disappeared from the specification in July, 1851. The only material invention which the applicant claimed to patent by the specification of July, 1851, was the combination of the straight needle with the shut-

tle, there being only one other claim in that specification, namely, one respecting the application of the driving force to the needle. Both of these claims were rejected, in October, 1851, and the one last named was then erased. The other claim, the combination of the straight needle with the shuttle, remained as the only claim sought. It was rejected again in January, 1852, rejected again in February, 1852, and rejected again in May, 1852. The applicant was then advised, by the official letter of the patent office, to withdraw his application or to take an appeal from the decision of the office. He did not do either, but transmitted to the office, in January, 1853, a new specification, with a new oath then taken. What that specification contained does not appear, though the fair presumption is, that it was the same specification which was again filed on the 14th of March, 1853, and that, therefore, it claimed nothing more than the combination of the straight needle with the shuttle. It does not appear that that specification was then passed upon by the office. It was returned to the applicant in February, 1853. Up to that time, there can be no doubt that the proceedings in the case had all of them taken place under the application of December, 1850. Only one fee of thirty dollars had been paid. At this stage the controversy in the case arises. The patent office received the petition, specification, oath, and certificate of the payment of thirty dollars fee, which were filed on the 14th of March, 1853, and the drawings which were filed April 1st, 1853, and the former model, which had been originally filed in December, 1850, as constituting a new application. The applicant paid a new fee of thirty dollars, in addition to the one which he had paid in December, 1850. The records of the patent office show that the patent sued on is regarded there as having been issued on an application filed March 14th, 1853, and that that application is there regarded as a new and different application from the one filed in December, 1850. The specification filed in March, 1853, presented no claim to any feature except the combination of the straight needle with the shuttle, and no claim to any one of the four improvements covered by the patent in suit. The claims to the improvements covered by claims two, three and four of that patent appear for the first time, as claims, in the specification of September, 1856; and the claim to operating the needle by a crank-pin or roller on a rotating shaft acting in a cam-groove, which claim appeared in the specification filed in December, 1850, but was dropped after July, 1851, was revived, for the first time after the latter date, in this specification of September, 1856.

If what has been recited as having taken place prior to March, 1853, in respect to Singer's application, had never taken place, there can be no doubt that it could not have been urged as a valid objection to the patent sued on, that the inventor did not, until September, 1856, ask for a patent for any one of the four claims covered by that patent; and, even though it had been shown that the improvements covered by those four claims were in public use and on sale, with the consent and allowance of the inventor, as early as March, 1853, the inventor would have been regarded as having applied, in March, 1853, for a patent for such improvements, they having been satisfactorily represented in the drawings and model then presented with the specification, although not claimed until September, 1856, as inventions. This is familiar law, in regard to applications for patents. The specification is always open to amendment of its description and claims, and to the addition of new matters of description and new claims, where the drawings and model exhibit the matters involved in the amendments and additions; and this privilege continues until the matter of the application is finally disposed of, by the granting of a patent, or otherwise. So, also, if a patent had been granted to Singer, on any of his specifications prior to that of September, 1856, with claims not containing any of the improvements covered by the claims in the patent sued on, he might have obtained a reissue of such patent, on an application for such reissue made in September, 1856, with the claims found in the patent sued on, and it would have been no objection to the validity of any claim in such reissue, that machines containing the improvement covered by it were in public use and on sale, with the consent and allowance of Singer, for more than two years before September, 1856, even though the granting of such claim had never been asked for prior to September, 1856. So, also, if the patent sued on had been issued prior to March 14th, 1853, with no one of the four claims now found in it, it would have been no objection to the validity of any claim found in a reissue of it made after that date, that machines containing the improvement covered by such claim had been in public use and on sale, with the consent and allowance of Singer, for more than two years prior to the application for the reissue, and that the granting of such claim had not been asked for before the making of such application for reissue. Moreover, if, in March, 1853, only the new specification and oath then furnished had been presented, and there had been no new petition, and no payment of a new fee, and there had been no technical refiling of the former drawings and model, it could not be doubted, that the patent issued in November, 1856, would have relation to the application of December, 1850, and that the claims found in it would be considered as having been applied for in December, 1850, even though the granting of no one of them had been asked for, in any specification, prior to September, 1856. In analogy to these views, I do not think that Singer can be regarded as having, by anything he or the patent office is shown to have done, abandoned his application of December, 1850. The inventions claimed in his patent of 1856 having been shown in his model and drawings filed in December, 1850, he is, in view of the set-

tled law in regard to applications for patents, and in regard to reissues of patents, to be regarded as having applied in December, 1850, for a patent for every thing found in such model and drawings, for which he could then have obtained a valid patent. He could have withdrawn his application of December, 1850. In such case he would have abandoned it. But he did not withdraw it, nor did he ever appeal from any decision made by the patent office in regard to it. On the contrary, he persisted in asking for a patent for some one or more of the features found in it, until he was successful. The only circumstance which gives any plausibility to the view, that the application of December, 1850, was in such wise abandoned that it cannot be regarded as an application for the patent issued in 1856, is the fact of the payment of the new fee, in March, 1853. But forfeitures and abandonments are not favored. They must be clearly made out. Singer clearly had a right, on his application of 1850, to obtain the patent which he did obtain in 1856, for the claims found therein. He was endeavoring to obtain, on that application, a patent for something. He had failed. In connection with his omission and refusal to withdraw his application, even though advised by the patent office to do so in May, 1852, after a fifth rejection, the payment of the new fee in March, 1853, ought, rather, to be regarded as indicating an intention not to abandon his application of 1850. The specification which he sent in in March, 1853, persisted in claiming nothing but the combination of the straight needle with the shuttle—a claim which had been the only claim asked for from July, 1851, down, and had been, since that date, rejected four times. The letter of his attorney, of March 11th, 1853, transmitting the new specification, speaks of the application as one that had been several times rejected, and states that the new specification is submitted in the matter of such application, and asks for a reconsideration of the case. The letter of his attorney, of March 16th, 1853, states that the two applications are identical, and that he is glad, therefore, that the same model may be used. It is, also, apparent, from the letter of his attorney, of October 11th, 1856, that the applicant regarded the proceedings which took place after March 14th, 1853, as a part of the application of December, 1850, although the date of January, 1853, instead of March, 1853, is erroneously given in that letter. No action of the patent office, in regarding the application of 1850 as abandoned, or in regarding the patent of 1856 as issued under an application made in 1853, and not under the application of 1850, can vary or affect or prejudice the rights of Singer. So long as he did not abandon, voluntarily, his application of 1850, there is no reason, on the facts in this case, why the patent of 1856 should not, in respect to the question under consideration, be held to have been issued on the application of 1850, even though, as between himself and the government, what took place in March, 1853, should

be regarded as constituting a second application. It did not invalidate or destroy the first application, or work an abandonment of it by Singer. Nothing could do that but the voluntary act of Singer, or a positive provision of the statute. The mere fact of his making the second application cannot be regarded as an abandonment by him of the first one, so as to work a constructive abandonment of his inventions to the public. I must, therefore, hold, that, in view of the objection that the patent sued on is void, for the reason that the improvements covered by its claims were in public use and on sale, with the consent and allowance of Singer, for more than two years prior to his application for a patent for such improvements, the patent must be regarded as having been issued on the application of December, 1850, and that such objection is not well taken.

A defence, insisted on to the second claim of the patent, is, that the improvement covered by it was previously invented by one William Wickersham. That claim is a claim to "projecting the operative part of the surface of the feeding apparatus through the surface of the table, substantially as described, so that such feeding surface may act on a portion of the under surface of the material to be sewed,' to give the required feeding motion to space the stitches, while the other portions of the said material slide on the table, which answers the purpose of stripping the said material from the feeding surface, and to cover and protect the mechanism which operates the feeder, as set forth." The table referred to is a horizontal table. The material to be sewed rests upon it in a horizontal position. The feeding apparatus is a vertical wheel, revolving on a horizontal axis, below the table. The periphery of the wheel projects upward through a hole in the table, to a short distance above the upper surface of the table, and, in feeding, the wheel, as it revolves, acts on a portion of the under surface of the material to be sewed, while the residue of such material slides horizontally on the table. The second claim is limited to this apparatus, or any substantially the same. The feed-wheel of Wickersham rotated horizontally, on a vertical axis, within the shuttle-race of the machine, and was armed with small points on its periphery, such periphery projecting out of the shuttle-race far enough to allow of sufficient engagement of the points with the material outside of the shuttle-race, to feed such material. A spring pressed the material against the feed-wheel. But there was, in Wickersham's apparatus, no horizontal table, which supported the material to be sewed. Such material was held in suspension between the pressure-spring and the periphery of the feed-wheel. It is sufficient to say, that the use of this arrangement of Wickersham's would be no infringement of Singer's patent, and the defendants are free to use it, so far as that patent is

concerned. They have not established, by satisfactory evidence, that the apparatus of Wickersham is a full equivalent for that of Singer, covered by his second claim, or that the use of a horizontal table by Singer does not make his apparatus essentially different from that of Wickersham. The burden is on them to establish this, and they have failed to do so.

What is called the Lafetra machine, set up as containing the improvement claimed in the second claim of the patent, was, on the evidence, an abortive experiment.

It is set up, as a defence to the third claim of the patent, that a griping-pawl, actuated by the hand of the operator, had been before used, to gripe the feed-wheel, in an engraver's ruling machine, for the purpose of regulating the distance between the lines, instead of using a pawl and ratchet. It is a sufficient answer to this defence to say, that the third claim of the patent, in claiming the use of a griping lever, "substantially as described," to impart the feeding motion to the feeder, claims such use to impart such motion automatically, and as a part of auto-matic organized mechanism, and not by hand. The motion is described as being imparted by the griping lever automatically, and not otherwise. To so impart it automatically is a patentable invention, notwithstanding the prior use of the hand griping-pawl, in the engraver's machine.

It is also set up, as a defence, that some or all of the improvements covered by the patent sued on were described and represented, though not claimed, in a patent granted to Singer August 12th, 1851, and in a reissue thereof, granted to him October 3d, 1854, and in a patent granted to him April 13th., 1852. It is a sufficient answer to this defence to say, that it is disposed of by the determination already arrived at, that the application made by Singer in December, 1850, remained in force, as a continuing application, until the granting of the patent in 1856, and that the patent is to be regarded as having been issued on that application. Such determination is as applicable to the defence thus raised, as to the defence of constructive abandonment. A patent is never invalidated by the fact, that the invention claimed in it was described, but not claimed, in a patent granted subsequently to the making of the application for the patent secondly issued, but before it was granted.

The remaining defence set up is, that the improvements covered by the patent sued on were either invented by one Orson C. Phelps, and communicated by him to Singer, or were invented by Phelps and Singer jointly, and not by Singer alone. Without discussing at length the evidence taken on this question on both sides, it is sufficient to say, that it is established, by overwhelming testimony, that Singer was the sole inventor of those improvements, and that Phelps was not the inventor of them, either alone or in conjunction with Singer. The testimony of Phelps himself is counterbalanced by the oath of Singer to his specification, the conduct of Phelps was wholly inconsistent with his having been connected at all, as inventor, with a machine which, from the very start, and as early as January, 1851, proved itself to be a success, and the testimony adduced on the part of the plaintiffs establishes that the story of Phelps, as to his connection with the invention, is a pure fabrication.

This disposes of all the questions raised in the case. The infringement of all the claims of the patent is not disputed, and the defendants' machine manifestly embodies all of them.

There must be the usual decree for an injunction, and an account of profits, with costs to the plaintiffs.