VICTOR TALKING MACH. CO. et al. v. AMERICAN GRAPHOPHONE CO.

(Circuit Court, S. D. New York.    September 28, 1905.)

1. PATENTS—SUIT FOR INFRINGEMENT—EQUITY JURISDICTION.
    Where a bill alleging infringement of an unexpired patent demands damages and a permanent injunction, equity has jurisdiction.
    [Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 439.]

2. CONTRACTS—VALIDITY—OUSTING JURISDICTION OF COURTS.
    A prior agreement, by which the parties to a suit for infringement of a patent agree on terms of settlement on condition that the patent is sustained, cannot deprive the court of jurisdiction to hear and determine the case.
    [Ed. Note.— For cases in point, see vol. 11, Cent. Dig. Contracts, § 608.]

3. PATENTS—PRIOR PUBLIC USE.
    The mere exhibition of an experimentally constructed machine by the inventor to an audience, accompanied by an explanation of the invention, no charge being made, is not such a public use as will defeat his right to a patent applied for more than two years afterwards.
    [Ed. Note.—For case in point, see vol. 38, Cent. Dig. Patents, §§ 93-95.]

4. SAME—ABANDONMENT.

A patent is not invalidated by the fact that the invention claimed was described, but not claimed, in an earlier application by the patentee, on which a patent was issued after the one in suit, where it is apparent that there was no intention to abandon the invention to the public.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 106.]

5. SAME—BURDEN AND MEASURE OF PROOF.

The burden of proving abandonment of an invention to defeat a patent therefor rests upon the party alleging the same, and evidence is insufficient which rests on doubtful inferences.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 112.]

6. SAME—INFRINGEMENT—GRAMOPHONE.

The Berliner patent, No. 534,543, for improvements in talking machines, was not anticipated, and discloses patentable invention; nor is it invalidated by prior public use of the invention or abandonment. Claims 5 and 35 also *held* infringed.

In Equity. On final hearing.

Horace Pettit, for complainants.

Elisha K. Camp (Philip Mauro and C. A. L. Massie, of counsel), for defendant.

HAZEL, District Judge. The bill is in equity, and relates to the infringement of letters patent No. 534,543, issued February 19, 1895, to Emile Berliner, assignor to complainants, on application filed March 30, 1892, for improvements in a talking machine commonly known as the "gramophone." The apparatus to which the improvements relate is constructed to record and reproduce vocal sounds. The patent has 35 claims, of which claim 5, for the process, and 35, for construction of the recording and reproducing apparatus, alone are involved. Such claims read as follows:

"(5) The method of reproducing sounds from a record of the same, which consists in vibrating a stylus and propelling the same along the record by and in accordance with the said record, substantially as described."

"(35) In a sound reproducing apparatus, consisting of a traveling tablet having a sound record formed thereon, and a reproducing stylus shaped for engagement with said record and free to be vibrated and propelled by the same, substantially as described."

At the date of the invention in suit it was not new to record sound and articulated words, and reproduce the same by suitable mechanical agencies. Numerous defenses are interposed in the answer, viz., anticipation, prior use, abandonment and nonpatentability. The objection is also urged that the court is without jurisdiction, on the ground that complainants, before the suit was instituted, agreed in writing to release the defendant from the payment of damages, and to grant to it a license to use, sell, and manufacture the patented machine, provided the patent in suit was held valid by the court. Such objection, however, which is erroneously sought to be sustained upon the authority of Root v. Railroad Co., 105 U. S. 189, 26 L. Ed. 975, is without merit. The principle is unassailable that, where mere damages are sought to be recovered in an action for infringement of a patent, a court of equity

will not interfere. But, where the bill alleging infringement of an unexpired patent demands damages and permanent injunction, equitable relief in a proper case will not be refused. A prior agreement, by which the interested parties mutually agree upon terms of settlement on condition that the patent in controversy is sustained by the court, cannot upon principle and authority deprive a court of its inherent power and jurisdiction. McMillin v. St. Louis & Miss. Valley Transp. Co. (C. C.) 18 Fed. 260; Guaranty Co. v. Green Cove Rd. Co., 139 U. S. 137, 11 Sup. Ct. 512, 35 L. Ed. 116. To the same effect, see Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148; Insurance Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365.

It is insisted on the part of the defendant that the evidence conclusively shows that there was a public use of the invention for more than two years prior to the application for the patent; that the inventor abandoned his right to the claims in suit by a postponement of them; and that in an earlier application for a patent he described such claims in his specifications, without, however, claiming them. The complainants contend that the alleged prior public use was for the purpose of experiment, and that there was no abandonment in fact. To properly understand the defenses it is necessary to consider the state of the art, and to briefly indicate the principles of the various talking machines commonly known and mentioned in the record. The references relied upon to anticipate the involved claims are first, the Franklin Institute lecture by the patentee on May 16, 1888; second, a publication by him in the Electrical World, on November 12, 1887; and, third, the patents to Bell & Taintor, No. 341,214, dated May 4, 1886, and to W. Suess, assignor to Emile Berliner, No. 427,279, issued May 6, 1890. In the British patent to Edison, No. 1,644, dated April 24, 1878, for recording and reproducing vocal sounds, the air vibrations were recorded by a system of indentations upon a pliable or yielding material, as, for instance, a thin sheet of metal or tin foil. The foil was ordinarily placed over a grooved substance, and received impressions of the voice through the instrumentality of a movable, inelastic diaphragm, having at its end an indenting point or stylus. In order to effectuate the reproduction of sound vibrations, the point of the stylus was essentially kept in constant contact with the revolving record, cylinder, or disc. This was accomplished by a mechanical device which propelled the stylus across the surface of the record. In the graphophone patent, issued to Bell & Taintor, the record was engraved or cut in waxlike or amorphous material. The form of cutting or engraving was in a spiral groove of varying depth; the side of the walls sloping toward the bottom. The stylus, which curved in a downward direction, was kept in the groove by gravity, and as the record rotated it was vibrated vertically "in the direction of its length." It is shown by the evidence that the graphophone in one form, which is illustrated in the drawings attached to the patent, required mechanical means to propel the record past the reproducer diaphragm and stationary stylus. In another form, a movable stylus attached to the diaphragm was propelled by an auxiliary device across the record, so as to retain the stylus point in constant contact with the vertical undula-

tions.   These different forms of talking machines are disclosed by
the patents of prior date; the common form of style being adapted
to record and reproduce vocal sounds at the instance of the user,
and the other to merely reproduce sound vibrations as had previously
been recorded in accordance with the process of the patentee.

In the patent to Emile Berliner, No. 564,586, issued on July 28, 1896,
application filed November 7, 1887, the process of recording and re-
producing sound vibrations differs essentially from the method used in
the phonograph and the graphophone.   The specification described a
process by which the sounds were inscribed upon a layer of nonresist-
ing material, which was afterwards copied in a nonyielding material,
from which the sounds were reproduced.   The specification says:

"The original record, as well as the copy of the same, is thus obtained as
an undulatory line of even depth, as distinguished from the line of varying
depth obtained by the ordinary phonograph and graphophone."

It is not disputed that such mode or process was a new and merito-
rious invention, and that it was not merely a patent for the functional
effect of the machine in connection with which it was used.   The ear-
lier specification does not claim the method nor the details of con-
struction of the claims in controversy.   Hence it is contended by the
defendant, as will presently appear, that there was a surrender or
waiver thereof.   In the patent in suit two features of the invention
are mentioned; one concerning the process or mode of recording sound
upon a record tablet, the other as to the construction of the apparatus.
Complainants contend, and the proofs show, that the stylus attached
to the diaphragm is arranged so as to permit the same to vibrate
laterally, and that, owing to lateral undulations in the walls of the rec-
ord groove, a desirable swaying motion is imparted to the reproducer
diaphragm.   Concededly, the lateral undulations in the record auto-
matically guide or propel the stylus and diaphragm in its course over
the disc from the outer circumference toward the center, and the
stylus travels in an apparently direct radial path, while at the same
instant of time it is pulsated or incited by the sound waves.

The principle of operation in the Berliner machine is thought to be
essentially different from that of the machine of Bell & Taintor.   In the
latter an auxiliary joint or feed screw was necessary, as already stated,
to effectuate the required passage of the record over the point of the
stylus, or to cause the stylus and reproducer diaphragm to travel across
the surface of the record.   In complainants' patent, on the other hand,
it is shown that the lateral vibrations of the stylus point, and the pro-
pelling of the same over the surface of the record without mechanical
assistance, and through the means of the groove alone, was the primary
object of the inventor.   In the Suess patent is contained a descrip-
tion corresponding to the features of claim 35 in suit.   The primary
object of Suess, an employé of Berliner, however, was merely to con-
struct a suitable pivotal support for the diaphragm and stylus, so as
to assist such device in its passage across the record.   It is expressly
stated in the specification of the Suess patent that the invention relates
to improvements in the reproducing apparatus of Berliner, and that

the construction and mounting of the stylus form no part of the invention. The improvement of Suess, therefore, is not an anticipation. Defendant insists that the Bell & Taintor specification fully described the Berliner process and specific combination. Such specification says:

"The invention consists, fourthly, in loosely mounting the reproducing style, so that it is free to follow the record."

And, further:

"Preferably the reproducing style, or rather what may be called the 'head' of the reproducing instrument, is mounted on an universal joint, and the style is pressed against the record by the yielding pressure of a spring or weight."

Stress is placed upon the language quoted; but, from what has already been said regarding the Bell & Taintor patent, it is manifest that the principle of Berliner's invention rests upon the practicability of propelling the stylus in the groove across the surface of the record without a feed screw or other mechanism. By such adaptation to what is known in the art as a zigzag record (complainant's record), certain imperfections in the talking machine were overcome, and sound, when reproduced, was rendered more intelligible. There was, I think, patentable novelty in the method which accomplished the results stated. The broad claims in suit in my judgment cannot be restricted to a record of even depth, such as described in the specification. The essence of such claims would seem to include a sound record, which, when in juxtaposition with a diaphragm and stylus propelled in the manner described, is thereby enabled to successfully accomplish the primal object and purpose of the invention.

The next defenses, prior use and abandonment, may be considered together. The proofs show that the patentee used his machine and gratuitously delivered a lecture in relation thereto in the city of Philadelphia on May 16, 1888, to an audience of about 200 persons, more than two years before the application in suit, and that prior thereto, in the year 1887, he published an article in a periodical, the Electrical World, relating to his said discovery. He expressly stated in his lecture that the exhibit machine was the hasty result of a new mechanism, and the accomplishment should be measured by its future possibilities, and not wholly by the demonstration. It is not claimed that there were any sales of the instrument at the time of the exhibition and lecture. Indeed, it is conceded that the apparatus was not sold nor used by other persons until about six years later, when the patent in suit was issued. The mere exhibition of the machine to an assembled audience to hear an explanation of one's invention was not fatal to the patent under the authorities. Shaw v. Cooper, 32 U. S. 292, 8 L. Ed. 689; Egbert v. Lippmann, 104 U. S. 333, 26 L. Ed. 755; Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Eastman v. Mayor, etc., of City of New York (C. C. A.) 134 Fed. 844.

That a complete disclosure was made of the described plan of mounting the reproducer diaphragm and stylus in the specification attached to the application filed November 7, 1887, is freely admitted. Such disclosure consisted of a machine constructed in accordance

with the drawing (Fig. 10) of the earlier application. The diaphragm and stylus were mounted or suspended upon a conveyor arrangement having rollers. The inventor did not allow his invention, with his consent, to be embodied by other persons in a completed machine; and no profit or gain, until the patent was granted, was realized as a result of the invention. Moreover, the evidence and circumstances justify the assumption that the exhibition of the apparatus was purely experimental and in no sense a public use, within the meaning of the statute. In Elizabeth v. Pavement Co., supra, the Supreme Court considered the meaning and application of the words public use. In the opinion it is stated:

"But if the inventor allows his machine to be used by other persons generally, either with or without compensation, or if it is, with his consent, put on sale for such use, then it will be in public use and on public sale, within the meaning of the law. * * * Nicholson did not sell it, nor allow others to use it or sell it. He did not let it go beyond his control. He did nothing that indicated any intent to do so. He kept it under his own eyes, and never for a moment abandoned the intent to obtain a patent for it. In this connection, it is proper to make another remark. It is not a public knowledge of his invention that precludes the inventor from obtaining a patent for it, but a public use or sale of it."

This doctrine undoubtedly has application to the facts here. As already appears, the patent in suit was issued upon a later application than patent No. 564,586. Why the broad claims of the former were not made a part of the earlier application and specification does not appear. Defendant broadly contends that the fact of the omission by the patentee to claim the invention in the earlier application, considered in connection with the above-mentioned publication in the Electrical World and public exhibition, was an abandonment and forfeiture thereof. It is true Rev. St. § 4888 [U. S. Comp. St. 1901, p. 3383], requires the inventor to point out and distinctly claim the improvement or combination which he claims is his invention or discovery. If he omits so to do, such improvement or combination being apparent on the face thereof, he is presumed to have abandoned the same, and to have dedicated to the public that which is not claimed. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; Stirrat v. Excelsior Mfg. Co., 61 Fed. 980, 10 C. C. A. 216; McBride v. Kingman, 97 Fed. 217, 38 C. C. A. 123.

But it may be stated as a general rule that "a patent is never invalidated by the fact that the invention claimed in it was described, but not claimed, in a patent granted subsequently to the making of the application for the patent secondly issued, but before it was granted." This principle, as enunciated by Judge Blatchford in Singer v. Braunsdorf, 7 Blatchf. 521, Fed. Cas. No. 12,897, is thought to apply. See, also, Thomson-Houston Elec. Co. v. Elmira & Horseheads Ry. Co. (C. C.) 69 Fed. 257. In any event, it cannot justly be claimed from the facts that Berliner has done anything to indicate an intention to waive or surrender his discovery. To merely withhold a patent from the public has never been considered an abandonment; and the adjudged cases uniformly hold that an inventor may have a patent for an invention described, but not claimed, by him in

a prior patent to himself. Graham v. McCormick (C. C.) 11 Fed. 859; Vermont Farm Machine Co. v. Marble (C. C.) 19 Fed. 307; Eastern Paper-Bag Co. v. Standard Paper-Bag Co. (C. C.) 30 Fed. 63. In the latter case the language of the Supreme Court in Miller v. Brass Co. and James v. Campbell, supra, was interpreted as applying to reissues under the statute. It was broadly held that the description of another invention in a prior patent by the same inventor does not forfeit his right to afterward take out a patent for such invention. In this case the patent on the earlier application, as has been stated, was issued subsequent to the patent in suit. I am unable to perceive how the patentee's failure to claim the invention described in his earlier application can be construed as an abandonment thereof. It is true an abandonment of an invention by a patentee to the public is a question of fact, and may be established by the patentee's intention to abandon, or by inferences consistent therewith. Rifle & Cartridge Co. v. Arms Co., 118 U. S. 22, 6 Sup. Ct. 950, 30 L. Ed. 53; Planing Machine Co. v. Keith, 101 U. S. 479, 25 L. Ed. 936.

The burden, however, is upon the defendant to show that the invention was abandoned. Wyeth v. Stone, Fed. Cas. No. 18,107. Nor, indeed, should evidence of abandonment rest upon doubtful or controverted inferences. The publication in the Electrical World is not entitled to the probative weight claimed by the defendant. The rule is that the prior publication, in order to anticipate, must fully and clearly describe the invention, so as to enable the skilled in the art to completely understand it and reproduce the apparatus without assistance from the patentee. Badische Anilin & Soda Fabrik v. Kalle (C. C.) 94 Fed. 163; Cohn v. Corset Co., 93 U. S. 366, 23 L. Ed. 907. The prior publication, based upon the article mentioned, is not within the rule stated.

The elicited facts are thought to be foreign to sustaining the asserted defenses; and hence, infringement not being controverted, complainants are entitled to a decree adjudging the validity of the patent and its infringement, and for an injunction against the use of the machines or devices made in violation of claims 5 and 35 of the patent in suit, with costs.