### VICTOR TALKING MACH. CO. v. CARL LINDSTROM CO. et al.*

(District Court, S. D. New York. January 13, 1913.)

Patents ⨺328—814,786 and 814,848, for talking machine horns, held valid and infringed.

> The Johnson patents, No. 814,786 and No. 814,848, for improvements in amplifying horns for talking machines, disclose patentable novelty and are valid; also *held* infringed.

In Equity. Suit by the Victor Talking Machine Company against the Carl Lindstrom Company and Adolph Heinemann. Decree for complainant against Heinemann, and bill dismissed as to the Lindstrom Company.

Horace Pettit, of Philadelphia, Pa., for plaintiff.
Waldo G. Morse, of New York City, for defendants.

LEARNED HAND, District Judge. The issues in this case are three: Infringement, novelty, and utility. As to the first, there is no dispute as far as Heinemann is concerned. The machine infringes claims 2, 9, 17, 26, 40, 41, and 42 of patent No. 814,786, and 8 and 14 of patent No. 814,848, which are the only claims here in issue, and the real contest in the case is as to the novelty of these claims. They all depend upon whether it was invention to substitute, for a sound carrier to a straight horn, a bent horn beginning directly at the sound box.

Previously there had been two types of horn: First. There was the straight horn, attached directly to the sound box. This was the original form for all disc machines, and it had been a known form for cylindrical records, as Bettini, 618, 390, Figure 1, Lioret British, 6,073, A. D. 1897. This, however, had obvious inconveniences of shape and size, and because, in the case of a Berliner record, the needle must continually displace laterally the whole horn, whose inertia was naturally much greater than that of a short sound tube. Second. There was the other mode of approach; that is, to place the horn away from the sound box at some distance, and to conduct the sound to it by a tube, always of uniform bore. This may, or may not, have been as good a way as John-

son's; but it was certainly a different way, different in structure, different in derivation, which, from the point of view of invention, is a very important difference. This latter way of approach was common enough in the old graphophone—Bettini, 618, 390, Figure 2 (supposing a horn to be added, though apparently only ear tubes were contemplated); Baynes, 652, 710; Jensen, 671, 800; and in disc machines, Johnson & Moore, 773,290, and Johnson, 785,362. Valiquet's and Cheney's experiments also properly belong to this class; they were clearly not efforts to bring the horn to the box.

It certainly seems simple enough now to bend the horn of Lioret or Bettini, or the well-known Zenophone horn, which was unwieldy, into a U-form, and to make the same kind of connections as were familiar in the other types of machine; or, to put it in the other way, it seems simple to enlarge the sound tube into one of conical section, so that it should become a part of the horn. The fact remains, nevertheless, that whether or not it was easy to do, after once you thought of it, nobody thought of it. Of course, that alone is not enough, for all sorts of modifications occur in the general development of an art. I should not, for example, think the change from the universal joint of Hoschke's machine in the other suit to the sound box pivoted at the end of the sound arm was invention, and if this patent depended upon the modification only of claims 2, 26, and 40 over claim 9, I should hardly be prepared to call the change a patentable novelty. It was, however, more than that, for it combined in one invention the two methods described, which had each up to that time had a quite independent development. Whether that combination was within the inventive powers of the ordinary skilled artisan is a question which a priori cannot be determined. The best test is whether the need for it was old and the success real.

Before Johnson's invention disc machines had been common enough for at least five or six years, and their sale had been very large indeed. The industry was a large one, and invention had been busy in perfecting the details of the machine. The number of patents proves this, and the testimony corroborates it. The success of the patent was immediate and universal; so much so that it was difficult to dispose of the old stock. Since that time the success has continued, and has extended to many other countries. The sales have been enormous, and the patent has been imitated by others, a good sign of success.

To this success the defendant answers that the Berliner patent gave to the complainant a monopoly in the whole art, and that, there being no opportunity to compete, the Johnsons' success does not indicate that he would have displaced others in a free field. It is undoubtedly true that the whole proof is not so compelling as it would have been but for the Berliner patent; but it does not lose its force, nevertheless. The complainant had a patent upon a straight-arm tube, and could have exploited that with as much hope of profit as this, had it so successfully answered the needs of the art. Certainly, they were as much interested in perfecting their machine as though there had been others in the field. They were as much interested in trying out one device against the other, as though they had to compete upon the discs as well. Competition implies only the possibility of substitution of one

device for another; then the chance for choice appears, and that choice is effective, even though the whole art be in the hands of one man. Had the defendant shown that the complainant had a bias in favor of this device over others, the proof would have been less cogent; but he has not. Even then the proof of the purchasers' preference would have made strongly for the patent in suit.

Another consideration is that this patent was first exploited in 1903, while the Berliner patent was first sustained in 1905 (Victor Talking Mach. Co. v. American Graphophone Co. [C. C.] 140 Fed. 860), and did not receive the approval of any Circuit Court of Appeals till 1906 (145 Fed. 350, 76 C. C. A. 180). For three years the complainant had no monopoly of the market, and competition was open; for we all know that an unadjudicated patent is of small importance, where the competition is strong. Yet the success was, as I have said, immediate, and the old machines were at once displaced. So far as we can infer, the monopoly of the disc patents did not, therefore, contribute to the success of this patent, though perhaps it may have afterwards sustained it.

As to the proof of utility, I need not consider it at length. The defendant, an infringer, is hardly in position to urge that the change was not useful. Lehnbeuter v. Holthaus, 105 U. S. 94, 26 L. Ed. 939. Moreover, though the question is not free from doubt, Cross' experiments seem the most reliable evidence upon the subject, and they all indicate that the straight tubes muffle the sound. I do not disregard Valiquet's opinion, but it was not based on such accurate observation. As for Professor Hallock, he very frankly and honestly stated that the matter was not one for a priori deduction, and that the result was too complicated for the present science of acoustics to dogmatize about. In so far as a certain conclusion is possible, it will not overcome the presumption of utility which the patent carries.

I can see no proof of infringement against the Carl Lindstrom Company, and as to it the bill will be dismissed, with costs. The usual decree will go against Heinemann, but, in view of the stipulation, without costs.