LORIMER v. KEITH.

KEITH v. LORIMER.

KEITH v. LUNDQUIST.


PATENTS; INTERFERENCE; SUBSTITUTE APPLICATION; REDUCTION TO PRACTICE; PRIORITY; APPEAL AND ERROR.

1. An applicant may, by substituted application, relate back to the date of the filing of his first application for constructive reduction to practice as the basis of an award of priority in interference, where, although there is a specific difference between the forms of construction claimed in the applications, both show the generic features of the invention. (Citing *Cain* v. *Park,* 14 App. D. C. 42; *Lotterhand* v. *Hanson,* 23 App. D. C. 372; *Lotz* v. *Kennedy,* 31 App. D. C. 205; *Von Recklinghausen* v. *Dempster,* 34 App. D. C. 474, and *Field* v. *Colman,* 40 App. D. C. 598.)

2. The findings of the Patent Office tribunals upon claims as to conception, disclosure, and reduction to practice will not be disturbed by this court unless plain error is shown.

Patent Appeals Nos. 874, 877 and 878.    Submitted January 13, 1914. Decided March 2, 1914.

HEARING on appeals from decisions of the Commissioner of Patents in interference proceedings.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

These are interference cases involving claims to priority of an invention relating to automatic telephone exchange systems, particularly to such a system in which there is a plurality of "auxiliary switches" all having access to the same group of subscribers and means by which other switches, called "primary switches," are enabled to automatically pick out and connect with one of the auxiliary switches, which happens, at the time, to be out of use; such secondary switches being at the time so isolated in the system that other primary switches will not break into the connection thus made.    As stated by the Commissioner: "The invention is a comparatively broad one, capable of embodiment in a variety of specific forms, a number of different forms appearing in the records of the various parties to the proceeding."

The first two appeals—874 and 877—are from the final decision of the Commissioner in the first interference in which the applications of three distinct parties are embraced.    Keith, Erickson, and Erickson, filed June 18, 1902; Lorimer and Lorimer, April 24, 1900; Lundquist, April 30, 1900.

This has been called by counsel the "three-party interference," distinguishing it from the second interference to which there are two parties only—Keith, Erickson, and Erickson; and Lundquist.

The issue of the three-party interference is defined in five counts:

"1. The combination with a series of movable main switches,

and a series of movable auxiliary switches of electrically operated devices for moving a main switch to electrical connection with successive auxiliary switches, and means by which the circuit for the electrically operated devices will be automatically broken when the moved main switch reaches connection to an auxiliary switch which is in its normal position.

"2. In a telephone exchange, the combination with a series of main switches, and a series of auxiliary switches, each main switch being movable to connection with successive auxiliary switches, of devices by which upon operating a main switch such main switch will be automatically associated in electrical connection with the first auxiliary switch which is at the time in its normal position.

"3. In a telephone exchange provided with a plurality of switches any one of which may be used in establishing a talking circuit between a calling and a desired one of the other stations of the exchange, means for automatically selecting an idle one of such switches, and means for operating the selected switch for establishing such talking circuit.

"4. The combination with the stations of a telephone exchange, of a plurality of switches any one of which may be used in establishing a talking circuit between a calling and a desired one of the other stations, means for automatically selecting an idle one of such switches, and automatic means for isolating the selected switch.

"5. The combination with the stations of a telephone exchange, of a plurality of switches less in number than the number of stations in the exchange, and electrically operated means by which an automatically selected one of said switches may be used in establishing a talking circuit between different stations."

Lundquist, who alleges conception and disclosure in April or May, 1897, and reduction to practice in October or November, 1898, has been allowed the benefit of an earlier application filed, March 1, 1899, as a constructive reduction to practice. Keith, Erickson, and Erickson allege conception, disclosure and reduction to practice "early in 1897." Lorimer and Lorimer

allege conception in May or June, 1897; disclosure in August, 1897; and reduction to practice in the latter part of 1897, early part of 1898, and latter part of 1899.

The Examiner of Interferences found that Lundquist had conceived the invention as early, at least, as November 1, 1898. The other tribunals found no special occasion to affirm this point, as they, in common with the Examiner of Interferences, held that Lundquist was entitled to the date of his earlier application of March 1, 1899, for both conception and reduction to practice; and that the opposing parties had failed to show an earlier conception, hence priority over both was awarded to Lundquist.

The "two-party interference," from the decision in which appeal No. 878 has been prosecuted, was declared between the application of Lundquist filed April 30, 1900, and that of Keith, Erickson, and Erickson filed June 18, 1902, with the following issue:

"1. In a telephone exchange comprising a series of groups of electrically operated main switches and a corresponding series of lesser groups of electrically operated auxiliary switches, means for operating any main switch so as to cause a preliminary selection of any desired group of auxiliary switches, and automatic means for selecting and isolating an idle auxiliary switch out of the preliminary selected group of auxiliary switches.

"2. In a telephone exchange, a series of main switches each of which is individual for a connected telephone station, a lesser series of auxiliary switches each of which is common for all stations, devices on each main switch for moving it to electrical connection with successive auxiliary switches, and means by which a main switch so moved is automatically stopped when it reaches connection to an auxiliary switch that is in its normal position."

Count two was found to be readable upon Lundquist's earlier application of March 1, 1899, and as his opponents had failed to prove an earlier conception, priority was awarded to him for the same reasons as in the three-party interference. As

to count one, he was restricted to his filing date, April 30, 1900, but as it was held that the opponents' evidence failed to show an earlier date for the invention of the count, he was awarded priority as to that count also.

*Mr. D. C. Tanner* and *Mr. George E. Folk* for the appellants in No. 874.

*Mr. Charles C. Bulkley, Mr. Harold C. Swenarton,* and *Mr. Charles Neave* for the appellee in No. 874.

*Mr. Charles C. Bulkley* and *Mr. Harold S. Swenarton* for the appellants in Nos. 877 and 878.

*Mr. D. C. Tanner, Mr. George E. Folk,* and *Mr. Charles Neave* for the appellees in Nos. 877 and 878.

Mr. Chief Justice Shepard delivered the opinion of the Court:

The earlier Lundquist application of March 1, 1899, clearly disclosed an automatic telephone system embodying the invention of the issue of the three-party interference, and count two of the two-party interference. This application was allowed April 5, 1901, forfeited for failure to pay the final fee and abandoned; but in the meantime his present application had been filed. While the features of the broad invention are shown in both applications, there is a specific difference between the forms of construction set out and claimed in each.

Based upon these specific differences of construction, counsel for the opposing parties contend with ability and earnestness that the second application cannot properly be regarded as a continuation of the first. The several office tribunals, in turn, denied this contention. We think this conclusion is sound and supported by the following cases: *Godfrey* v. *Eames,* 1 Wall. 317, 324, 17 L. ed. 684, 685; *Cain* v. *Park,* 14 App. D. C. 42, 47; *Lotterhand* v. *Hanson,* 23 App. D. C. 372, 375; *Lotz* v.

*Kenney,* 31 App. D. C. 205, 209; *Von Recklinghausen* v. *Dempster,* 34 App. D. C. 474, 477; *Field* v. *Colman,* 40 App. D. C. 598, 605. As was said by Mr. Justice Van Orsdel in the last case cited: "The right of an applicant, by substituted application, to relate back to the date of filing the first application for reduction to practice, broadly depends upon whether the substituted application is for the same invention as that disclosed in the original application; not that the specific disclosure of the first and second applications may be different, or even patentably different, if generically they relate to the same invention. This interference is to determine who is the prior inventor of the invention in issue. * * * The invention in interference is defined by the counts of the issue. These counts were formulated by the Examiner for the purpose of describing and limiting the invention claimed by the parties to the interference. They relate to the respective embodiments [of the invention] as they existed at the date of the declaration of the interference. It is not material, then, as affecting the rule of continuity, if appellee's device in interference is not the specific embodiment of the device of the 1894 application, or that there may be changes in mechanism, or even patentable improvements in the later device, if it relates to the same invention, and the counts of the issue can be read into the original invention as disclosed by the 1894 drawings."

The fact that in that case the several successive applications specially referred to those preceding does not affect the application of the principle. See also *Victor Talking Mach. Co.* v. *American Graphophone Co.* 140 Fed. 860, 76 C. C. A. 180, 145 Fed. 350. The reasoning of the tribunals of the office on the point is quite satisfactory.

Each decision, in turn, reviews the evidence relating to the claims of the opposing parties to conception, disclosure, and reduction to practice of the issues of both interferences prior to the date awarded Lundquist in each, at length and with fairness. It is the rule not to reverse such findings, unless plain error can be shown therein. No such error has been shown; and without further discussion the decision in each case will be af-

firmed. The clerk of this court will certify this decision to the Commissioner of Patents as required by law.  *Affirmed.*